COLUMBIA CASUALTY COMPANY,
Appellant,

v.

HIAR HOLDING, L.L.C., and HMA Riverport, L.L.C., and Karen S. Little, L.L.C., Individually and on Behalf of the Other Members of the Certified Class, as Assignees, Respondents.

No. SC 93026.

Supreme Court of Missouri,
En Banc.

Aug. 13, 2013.

Motion for Rehearing and/or Modification Denied Oct. 29, 2013.

James F. Bennett, Edward L. Dowd, Jennifer S. Kingston, Selena L. Evans, Dowd Bennett LLP, St. Louis, MO, Christopher R. Carroll, Kristin V. Gallagher, Jonathan A. Messier, Carroll, McNulty & Kull LLC, Basking Ridge, NJ, for Appellant.

Alan S. Mandel, Mandel & Mandel LLP, John S. Steward, Steward Law Firm LLC, Max G. Margulis, Margulis Law Group, J. Vincent Keady Jr., Stinson, Morrison, Hecker LLP, St. Louis, MO, Brian J. Wanca, David Oppenheim, Anderson + Wanca, Rolling Meadows, IL, Phillip A. Bock, Robert M. Hatch, Bock & Hatch LLC, Chicago, IL, for Respondents.

MARY R. RUSSELL, Chief Justice.

An insurer that refused to defend its insured challenges its liability for damages that were agreed to in a settlement between the insured and a class of plaintiffs that brought suit alleging that the insured violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. section 227 *et seq.* After the class and the insured reached a settlement, the class filed a garnishment action against the insurer. The insurer sought a declaratory judgment that its policy with the insured did not provide coverage, and its arguments included that there was no coverage for damages awarded related to the TCPA.

The trial court ultimately entered judgments in favor of the class, holding that the insurer wrongly had refused to defend the insured and was liable to indemnify the insured by paying the settlement amount plus interest. The insurer appeals, and this Court affirms.[1]

## I. Background

The TCPA, 47 U.S.C. section 227 *et seq.*, is intended "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers." Sen. Rep. No. 102–178, at 1 (1991). The act allows a private right of action for recipients of unsolicited communications that violate the act. 47 U.S.C. section 227(b)(3). The recipients can bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. section 227(b)(3)(B). Further, the act provides for treble damages if, in the trial court's discretion, it is shown that the defendant "willfully or knowingly" violated the act. 47 U.S.C. section 227(b)(3).[2] Violations of the TCPA underlie this appeal.

Hotel proprietor HIAR Holdings LLC used a marketing services company to

---

1. Jurisdiction is vested in this Court pursuant to Missouri Constitution article V, section 10, as this matter was taken on transfer after disposition by the court of appeals.

2. The TCPA, 47 U.S.C. section 227(b)(3), provides in relevant part:
 (3) Private right of action
 A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
 (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
 (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
 (C) both such actions.
 If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

send approximately 12,500 unsolicited advertising facsimiles—"junk faxes"—to recipients in the 314 and 636 area codes in October 2001.[3] About 10,000 of the junk faxes were received. Karen S. Little LLC[4] brought a class action suit under the TCPA, seeking injunctive relief and statutory damages of $500 per occurrence (per fax sent).

At the time it had sent the junk faxes, HIAR was insured under a commercial general liability insurance policy from Columbia Casualty Company (Columbia). The policy's provisions included coverage for property damage and advertising injury.

After the class filed suit, HIAR tendered defense of the suit to Columbia. Columbia, however, refused to defend in a letter sent in December 2002. It asserted that it would not defend the suit or provide HIAR coverage under its policy because the claims of the class were outside the policy provisions. Another refusal to defend letter was sent to HIAR after it again requested a defense in October 2003.

In March 2005, the class made a settlement offer to HIAR for an amount within its insurance policy limits.[5] HIAR forwarded it to Columbia, which again refused to defend or cover the claims, and Columbia rejected the formal settlement offer and refused to participate in subsequent settlement negotiations. Columbia's

rejection and refusal letter asked that HIAR inform it of any revisions to the class's complaint in the case, but HIAR did not receive further correspondence from Columbia. Ultimately, HIAR defended the suit at its own expense for five years before agreeing to a class-wide settlement for $5 million in January 2007.[6]

The class moved for preliminary approval of the settlement. Evidence was provided to the court as to the reasonableness of the settlement, and it granted preliminary approval and determined that notice could be sent to the class regarding the settlement. Claim forms in the matter were to be returned by July 23, 2007, and 488 claim forms were returned seeking payment under the settlement proceeds. No objections from the class were received.

In April 2007, a final approval hearing was held regarding the settlement. The hearing included evidence of the reasonableness of the settlement, and the trial court approved the settlement. The trial court entered findings indicating that it had determined the settlement to be fair, reasonable, and not a product of collusion. It entered a judgment for the class, and it approved HIAR's assignment to the class of its claims against Columbia and any other insurer. The trial court's order indicated that the settlement proceeds not paid to the class claimants or for attorney fees would be distributed via *cy pres* to charitable organizations.

---

**3.** The faxes were advertisements for the hotel operated by HIAR and its related entity HMA Riverport LLC (HMA). An amended petition in this matter added HMA as a defendant. For simplicity, HIAR and HMA are referenced collectively in this opinion as HIAR.

**4.** This case was initiated by another party in 2002, and Little filed an amended class action petition in 2004 to substitute itself for the original named plaintiff. Both the original petition and Little's petition sought recovery under the TCPA for all HIAR-paid advertising junk faxes that were sent in the 314 and 636

area codes. For simplicity, Little is referenced throughout this opinion as "the class," even in those instances when Little acted individually as the representative plaintiff.

**5.** The policy's limits were $1 million per "occurrence" or $2 million in the aggregate.

**6.** HIAR's settlement agreement with the class limited its liability to its insurance assets. *Cf. Schmitz v. Great Am. Assurance Co.,* 337 S.W.3d 700 (Mo. banc 2011).

The class thereafter sought to collect on the settlement judgment by bringing a garnishment action against Columbia. The garnishment action sought the settlement amount plus post-judgment interest.[7] Columbia contends that HIAR failed to communicate anything to it about the case after the initial formal settlement offer was refused. Columbia maintains that it was informed about HIAR's settlement with the class only by way of the garnishment action. The class's pleadings highlighted that HIAR's insurance policy with Columbia provided coverage for "advertising injury" and "property damage." Columbia, however, objected to the applicability of its coverage, and it sought a declaratory judgment clarifying its duties to defend and indemnify the class's claims under HIAR's policy. The class's garnishment action was stayed pending resolution of the declaratory action.

In the declaratory action, the trial court first found that Columbia owed HIAR a duty to defend in the class action because it determined that the class's claims were covered under Columbia's policy provisions for "advertising injury" and "property damage."[8]

Cross-motions for summary judgment were filed regarding Columbia's duty to indemnify HIAR. The trial court entered a judgment in favor of the class's motion for summary judgment on the indemnity issues, finding that Columbia had a duty to indemnify HIAR for the full settlement plus interest.[9] The trial court cited this Court's holding in *Schmitz v. Great American Assurance Co.* for the proposition that an insurer that wrongly refuses to defend cannot thereafter litigate the reasonableness of an indemnification amount and becomes liable for the entire underlying judgment as damages flowing from its breach of its duty to defend. *See* 337 S.W.3d 700, 708–09 (Mo. banc 2011). The trial court found that Columbia acted unreasonably and in bad faith in handling HIAR's claim for coverage in the TCPA action initiated by the class. Its judgment reiterated that the class's and HIAR's settlement was reasonable and negotiated in good faith.

The trial court overruled a motion by Columbia to add a party—HIAR's excess insurer—as a defendant. Columbia sought to add the excess insurer as a defendant to obtain a declaration of rights and obligations for the TCPA action as to the excess insurer's policy. The trial court also rejected Columbia's motion that it amend and reconsider its judgment.

Columbia appeals. It raises a number of arguments asserting that summary judgment in favor of the class was in error because the trial court concluded wrongly that Columbia has a duty to indemnify HIAR for its settlement with the class for HIAR's TCPA violations. Columbia maintains that HIAR's insurance coverage was inapplicable, particularly because HIAR's TCPA violations were intentional and resulted in statutory damages that are akin to fines and penalties. Columbia also al-

---

7. Columbia's counsel stated at oral argument that the settlement amount plus interest totaled $8.4 million.

8. The trial court also determined that the class's claims were within the plain language of Columbia's policy provisions related to a "products-completed operations hazard." This factor is part of Columbia's policy related to "property damage," as the policy's "property damage" provisions included a sec-

tion defining a "products-completed operations hazard" (Coverage A, 14a).

9. Columbia highlights that it entered a settlement and stipulation of dismissal with prejudice in October 2011 as to HIAR's potential claims regarding Columbia's refusal to defend, including any claims for breach of contract and bad faith.

leges that the trial court erred in refusing to allow HIAR's excess insurer to be added as a party.

## II. Standard of review

 Columbia's arguments challenging the trial court's entry of summary judgment in favor of the class are reviewed *de novo*. *See ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom judgment was entered. *Id.*

Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* A defendant can establish that he is entitled to summary judgment by showing: (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense. *Id.* at 381. A summary judgment, like any trial court judgment, can be affirmed on appeal by any appropriate theory supported by the record. *Turner v. School Dist. of Clayton*, 318 S.W.3d 660, 664 (Mo. banc 2010).

 Non-summary judgment arguments, however, require application of a different standard. Columbia's argument that the trial court erred in denying its motion to add HIAR's excess insurer as a party is reviewed for abuse of discretion. *See Clark v. St. Louis Transfer Ry. Co.*, 127 Mo. 255, 30 S.W. 121, 124 (1895) (discussing that a motion to amend a petition is a decision that "rest[s] largely in the discretion of the trial court" and the ap-

peals court "will not interfere unless it is apparent that the discretion has been arbitrarily and unjustly exercised"); *Asmus v. Capital Region Family Practice* 115 S.W.3d 427, 432 (Mo.App.2003) ("Motions to amend to add or substitute a party should be freely granted when justice so requires. . . . [A] party may amend his pleadings at any time by leave of the court and that such leave should be freely given. . . . [T]he trial judge has broad discretion to permit amendment of the pleadings[.]").

## III. An insurer that wrongly refuses to defend an insured can be liable to indemnify the insured for an underlying judgment for damages that is adjudged to be reasonable

The issues in this appeal include whether summary judgment was entered properly in favor of the class pursuant to *Schmitz v. Great American Assurance Co.*, 337 S.W.3d at 708–09. Columbia disclaims that *Schmitz* supports the trial court's determination that Columbia is liable to indemnify HIAR for the underlying settlement judgment plus interest because Columbia wrongly refused to defend HIAR in the class litigation.

 Contrary to Columbia's assertions, *Schmitz* instructs the decision in this case. *Schmitz* explains that when an insurer is bound to protect its insured from liability, it is bound by the liability determination in the litigation to which the insured is a party, so long as the insurer had the opportunity to control and manage the litigation. 337 S.W.3d at 709. *Schmitz* highlights that "[t]he standard is whether the insurer had the *opportunity* to control and manage the litigation, not whether the insurer had the *duty* to control and manage the litigation." *Id.* at 709–10 (emphasis in original).

 *Schmitz* also establishes that an insurer that refuses to defend its insured can thereafter relitigate the issue of the reasonableness of the damages the insured has been declared to owe under *Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810 (Mo. banc 1997), only if the insured is trying to enforce a settlement amount that has not been the subject of a judgment by a trial judge approving its reasonableness. Where the trial court has entered judgment after a hearing on liability and damages, then *Schmitz* holds that the insurer is not entitled to a second hearing on reasonableness in any garnishment or declaratory judgment action based on the policy. *See* 337 S.W.3d at 708–09. The insurer that wrongly refuses to defend is liable for the underlying judgment as damages flowing from its breach of its duty to defend. *Id.* The "insurer cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." *Id.* at 710 (internal quotations omitted).

The trial court applied *Schmitz* in this case when entering summary judgment in favor of the class. It found that Columbia was required to indemnify the class's settlement amount because the parties submitted to a liability and damage trial before the court, which entered a judgment finding that the settlement amount was reasonable and finding that Columbia wrongly had refused to defend HIAR given that its policy coverage was applicable in the case.

Considering *Schmitz*, this Court must assess whether Columbia breached its duty to defend HIAR in light of its policy coverage.[10]

## IV. The trial court correctly determined that Columbia wrongly refused to defend HIAR under its policy coverage because a TCPA award is not a penalty or a fine

 Columbia's arguments that the trial court erred in entering summary judgment in favor of the class include that the trial court's indemnification findings are in error because nothing in the class's TCPA claims against HIAR invoked Columbia's duty to defend insofar as Columbia's policy coverage for "property damage" and "advertising injury" does not encompass fines and penalties imposed for TCPA violations. Columbia insists that statutory damage awards under the TCPA represent fines and penalties imposed on a junk fax sender, not a compensatory award for a junk fax recipient. It contends that nothing in its insurance policy with HIAR provided coverage for statutory fines and penalties.

In relevant part, HIAR's insurance policy with Columbia insured against "those sums that the insured becomes legally obligated to pay as damages because of [prop-

---

10. This Court previously has explained an insurer's duty to defend its insured as follows: The duty to defend is broader than the duty to indemnify. To suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make the duty to defend provision a hollow promise[.] *The duty to defend arises when ever there is a potential or possible liability* to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial. The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. *If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend.* McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 170–71 (Mo. banc 1999) (internal quotations and citations omitted) (emphasis added).

erty damage or advertising injury] to which this insurance applies." The provisions of the policy related to "property damage" included an explanation that it is caused by an "occurrence," which means "an accident." The provisions related to an "advertising injury" indicated that such an injury is caused by "an offense committed in the course of advertising your goods, products, or services." The policy's definitions for an "advertising injury" included that it could be an "oral or written publication of material that violates a person's right to privacy." Columbia maintains that "advertising injury" damages must be compensatory damages. Nothing in Columbia's policy with HIAR, however, expressly defined the policy's use of the term "damages."

Columbia maintains that the trial court erred in determining that the term "damages" in HIAR's policy encompasses coverage for TCPA-related claims. Columbia argues that the policy's reference to "damages" cannot include TCPA claims because the TCPA's provision for statutory damages of $500 per occurrence (for each junk fax) is a statutory penalty or fine that the law directs cannot be considered "damages." Columbia highlights that this Court discussed in *Farmland Industries, Inc. v. Republic Insurance Co.* that "damages" for purposes of insurance coverage does not include awards imposing fines and penalties. 941 S.W.2d 505, 510–11 (Mo. banc 1997).

*Farmland Industries* addressed the scope of the term "damages" as applied under an insurance policy that did not expressly define the term to encompass equitable relief. *See id. Farmland Industries* noted that terms in insurance policies are given their "ordinary meaning." *Id.* at 508. *Farmland Industries* discussed:

When interpreting the language of an insurance policy, this Court gives a term its ordinary meaning, unless it plainly appears that a technical meaning was intended. *Peters v. Employers Mut. Casualty Co.*, 853 S.W.2d 300, 303 (Mo. banc 1993); *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 27 (Mo.1969). The ordinary meaning of a term is the meaning that the average layperson would reasonably understand.

. . .

The Dictionary of Insurance Terms defines "damages" as "the sum the insurance company is legally obligated to pay an insured for losses incurred." Harvey W. Rubin, Dictionary of Insurance Terms 71 (1987). Similarly, the Dictionary of Insurance defines "damages" as "the estimated reparation in money for injuries sustained." Lewis E. Davids, Dictionary of Insurance 85 (6th rev. ed.1983).

. . .

. . . [F]ines or penalties are not included within the ordinary meaning of "damages." The ordinary meaning of a "fine" or "penalty" is not compensation or reparation for an injury; rather, it is a sum imposed as punishment. Webster's Third New International Dictionary 852, 1668 (1961). Because fines and penalties are not "damages," the term limits liability under the policy to something less than "all sums which the insured shall become legally obligated to pay because of property damage."

*Id.* at 508, 510–11.

Columbia argues that the damages sought by the class in this case are not "damages" pursuant to this Court's discussion in *Farmland Industries*. It asserts that the amount must be a penalty because it is intended to deter junk faxes and not to compensate actual injury suffered by the junk fax recipient, whose actual dam-

ages could be compensated at a near-nothing amount.

In contrast, the class's position, which was accepted by the trial court, emphasizes that an insurance policy should be given a broad and inclusive interpretation when there is ambiguity in the scope of the meaning of "damages"—particularly when the policy does not define "damages" with specificity. The class notes that the law favors reading an ambiguous insurance provision in favor of providing coverage for the insured. *See Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). Moreover, the class argues that the TCPA as applied in this case is not reflective of a fine or penalty, and it asserts that Columbia could not evade its duty to defend in this matter on the basis that the TCPA provides liquidated damages that exceed the actual costs suffered by junk fax recipients.

This issue has been discussed in a prior case. In *Olsen v. Siddiqi*, the court of appeals considered a similar case, in which a class of junk fax recipients sued for TCPA violations and elected to seek the $500-per-occurrence statutory damages amount for each violation. 371 S.W.3d 93 (Mo.App.2012). In *Olsen*, a settlement was reached and the class sought to recover from the defendant's insurer. *Id.* at 95. The insurer appealed after the trial court found in favor of the class in the class's

garnishment action. *Id.* at 95–96. The insurer's arguments included that its policy did not provide coverage for the class's TCPA damages because its policy coverage for "property damage" did not encompass coverage in the nature of fines and penalties. *Id.* at 96–97. The court of appeals held that the TCPA is remedial when recovery for actual monetary loss is sought and penal when the $500-per-occurrence statutory damages award is sought. *Id.* at 97.[11]

*Olsen*, however, was incongruent with the position of the Eighth Circuit in *Universal Underwriters Insurance Co. v. Lou Fusz Automotive Network, Inc.*, which found that a TCPA $500-per-occurrence statutory damages award is not simply a "penalty." 401 F.3d 876 (8th Cir.2005). *Universal* declared that the TCPA $500-per-occurrence statutory damages award serves "more than purely punitive or deterrent goals." *Id.* at 881. *Universal* found that an insurer disclaiming its coverage for a TCPA award had a duty to defend insofar as even a "portion of the fixed amount [of $500 statutory damages] represents a liquidated sum for uncertain and hard-to-quantify actual damages," including "loss of use of equipment and phone lines for outgoing and incoming faxes, the expense of paper and ink, and the resultant inconvenience and annoyance . . . [of] unsolicited fax advertisements . . . in-

11. In *Harjoe v. Herz Financial*, this Court addressed Herz Financial's due process challenge to the TCPA alleging that the TCPA statutory "penalty" violated the Eighth Amendment as a "grossly excessive punishment." 108 S.W.3d 653, 655 (Mo. banc 2003). The amount awarded pursuant to the TCPA in that case was characterized as a "statutory penalty," and, without analyzing that language, this Court utilized the term "penalty" in declaring, "Congress is entitled to consider what *penalty* is sufficient to deter violation of the statute and induce private persons to sustain the cost of prosecuting the

action." *Id.* (emphasis added). Because no issue was raised or adjudicated in the case regarding whether the TCPA awarded damages or penalties, *Harjoe* is not precedent for the issues in this case.

Comparatively, in *Collier v. Roth* the court of appeals discussed recovery of statutory damages pursuant to the Unfair Milk Sales Practices Act (section 416.425, RSMo 1969). *See* 468 S.W.2d 57, 60 (Mo.App.1971). *Collier* declared that the statutory damages under that act were penal in nature. *See id.* at 61–62.

terfer[ence] with company switchboard operations and burdens [on] the computer networks of those recipients who route incoming faxes into their electronic mail systems." *Id.* (internal citations and quotations omitted). *Universal* noted that "[t]hese harms, while small in reference to individual violations of [the TCPA], nevertheless represent compensable harms encompassed by a liquidated sum within the fixed amount." *Id.*

*Universal* discussed that whether the damages were viewed "as a liquidated sum for actual harm or an incentive for aggrieved parties to act as private attorneys general, or both, ... the fact that Congress elected to make treble damages available separate from fixed damages" showed that the $500–per–occurrence statutory damage awards, by themselves, are not a penalty. *Id.* The Eighth Circuit's determination in *Universal* that TCPA $500–per–occurrence statutory damages awards are remedial and not penal in nature is consistent with decisions that a number of other courts have reached finding that statutory liquidated damages under the TCPA are remedial and not penal. *See, e.g., Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1311 (11th Cir.2008) (finding that "the TCPA's statutory damages are not punitive"); *Terra Nova Ins. Co. v. Fray–Witzer,* 449 Mass. 406, 869 N.E.2d 565, 575 (2007) ("We conclude that these characteristics define the TCPA as a remedial statute intended to address misdeeds suffered by individuals, rather than one that punishes public wrongs."); *Motorists Mut. Ins. Co. v. Dandy–Jim, Inc.,* 182 Ohio App.3d 311, 912 N.E.2d 659, 668 (2009) (holding that the TCPA's statutory damages are not punitive in nature).

In light of the discussion in *Universal,* Columbia is not persuasive in its assertions that the term "damages" in its policy with HIAR could not encompass the class's TCPA claims. TCPA statutory damages of $500 per occurrence are not damages in the nature of fines or penalties.[12] To the extent that *Olsen* declared otherwise, it no longer should be followed on this issue. Contrary to Columbia's assertions, the trial court did not err in rejecting Columbia's contentions that its "property damage" and "advertising injury" coverage was inapplicable on the basis that TCPA awards could not result in "damages" covered under the policy.

## V. The trial court did not err in concluding that coverage for "property damage" and "advertising injury" was applicable

In addition to its assertions that the class's TCPA claims were outside of HIAR's policy coverage because they were fines or penalties, Columbia also raises a number of policy-specific arguments. It asserts that there was not coverage for the class's claims against HIAR because Columbia's policy provisions for "property damage," including "products-completed operations" coverage, and for "advertising injury" provide no coverage for the class's claims.

### 1. "Property damage" coverage was invoked

 Columbia asserts that "property damage" coverage was not invoked as to the class's claims because HIAR's policy requires an "occurrence," which is defined under the policy as "an accident." Columbia argues that the intentional sending of

---

12. Columbia's arguments include that the circuit court erred in refusing to consider that the class's settlement cannot be insured because it would be akin to insuring punitive damages. This argument is not persuasive in light of this Court's conclusion that TCPA statutory damages are not in the nature of fines and penalties.

junk faxes to the fax recipients in the class cannot be an "occurrence" covered by the policy because there was nothing accidental about the conduct. It notes that a federal court in Texas has held that sending junk faxes is intentional conduct. *See W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.,* 269 F.Supp.2d 836, 844–45 (N.D.Tex. 2003). It urges this Court to similarly consider that whether HIAR's acts were accidental must be judged by considering HIAR's intent underlying sending the junk faxes and whether the class's subsequent injury was reasonably foreseeable or an intended consequence of sending junk faxes. *See id.*

Columbia further contends that its "property damage" coverage was inapplicable to HIAR because HIAR's actions were intentional and, therefore, excluded from coverage under Columbia's policy's "expected or intended" injury exclusion. Columbia notes that this exclusion is established when it can show an insured's intentional act resulted in consequences "substantially certain" to flow from the intentional act.

These arguments premised on HIAR having committed an intentional act by sending junk faxes are not persuasive. The circuit court determined that HIAR's actions in violating the TCPA reflected negligent conduct, as it found that HIAR did not intend to violate the TCPA and did not intend injury to the class. The circuit court accepted HIAR's assertions that it believed that its marketing company had the consent of fax recipients to receive HIAR's advertising faxes.

The applicability of insurance coverage in a TCPA junk-faxes case requires consideration of whether the insured junk-fax sender intended to cause harm. *See Universal Underwriters,* 401 F.3d at 882–83 ("[I]f a finder of fact ultimately determines that [the accused insured TCPA violator] not only violated the Act, but did so with an intent to cause harm, the [insured's] policy would provide no coverage [under its intended injury exclusion];" noting that there was a factual question left open as to whether the insured intended the harm that triggered the exclusion).

In this case, the trial court did not err in rejecting Columbia's contentions that coverage was inapplicable on the basis that HIAR intended to send the faxes that resulted in its TCPA violations. Nothing in the record supports a contention that HIAR sent the faxes intending to injure the recipients or violate the TCPA. *See Am. Family Mut. Ins. Co. v. Pacchetti,* 808 S.W.2d 369, 371 (Mo. banc 1991) (requiring that the insurer refusing coverage under an intentional injury exclusion must show that the insured intended the acts that caused injury and that the injury was intended or expected).

### 2. "Advertising injury" coverage was invoked

 As to its "advertising injury" coverage in HIAR's policy, Columbia raises a number of challenges beyond its contention that TCPA damages are not covered because they are penal in nature.[13] Columbia argues that there was no coverage under its "advertising injury" policy language because that coverage pertains to publication of material that violates an individual person's right of privacy and it contends that the coverage was not invoked under the facts of this case. Columbia argues that the phrase in its policy

---

**13.** Columbia's arguments asserting a lack of coverage under its "advertising injury" policy language include its contention that there is no coverage because the penal statute exclusion bars coverage. This argument is unpersuasive in light of this Court's determination that the TCPA is not a penal statute as it is applied in this case.

indicating that an "advertising injury" relates to "material that violates a person's right to privacy" is limited to privacy violation claims that allege violations arising out of the content of the advertising material itself. Columbia asserts that its privacy language in its policy is not a reference to protecting seclusion rights guarded by the TCPA. It argues that the TCPA is aimed at protecting junk-fax recipients from costs and business disturbances and not at protecting them from violations of privacy interests.

These privacy rights arguments are not persuasive in establishing that the trial court erred in determining that "advertising injury" coverage was invoked in this case. The class's claims alleged privacy rights violations pursuant to the TCPA, which has been recognized as providing privacy protections. For example, in *Universal Underwriters*, the Eighth Circuit found insurance coverage was invoked in a TCPA case when the insured's policy included coverage for claims based on "invasion of rights of privacy." *See* 401 F.3d at 881. The court explained:

> We also find that the complaint alleges an "INJURY" under the policy. The policy lists "private nuisance (except pollution), [and] invasion of rights of privacy or possession of personal property" under the definition of INJURY. It does not limit or qualify these terms in any manner. It sets forth technical definitions for neither "private nuisance" nor "invasion of rights of privacy." Accordingly, under Missouri law, we must apply ordinary, lay definitions to these terms. Looking at how Congress described unsolicited fax advertisements ... it is clear that Congress viewed violations of the Act as "private nuisances" and as "invasions of privacy"

under ordinary, lay meanings of these phrases.
*Id.*

Because Columbia did not more expressly limit its "advertising injury" coverage by providing more precise definitions in its policy, a reasonable interpretation of HIAR's policy can include that coverage is available for the privacy rights claims of the class. *See Velder v. Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 517 (Mo.App. 2008) (noting that an insurance contract is interpreted against the drafter if it can be construed in two equally reasonable ways).

█ Columbia further argues that coverage was unavailable for "advertising injury" under HIAR's policy because that coverage is intended for a private person and not for an incorporeal interest like Little LLC. This argument is not persuasive given that Congress enacted the protections of the TCPA after contemplating the privacy interests of persons and of businesses. *See Universal Underwriters*, 401 F.3d at 882 (noting that, during debate about the TCPA, Congress heard complaints from businesses that junk faxes are an invasion of privacy and an interference with commerce). And, contrary to Columbia's assertions that TCPA claims do not invoke "advertising injury" protections because the act is not aimed at protecting privacy rights, the TCPA includes privacy rights for businesses and persons. *See* 47 U.S.C. section 227(b)(3).

For these reasons, the trial court did not err in determining that "advertising injury" coverage was invoked in this case.

### 3. "Contractual liability" exclusions do not negate HIAR's policy coverage

█ Columbia asserts that the trial court erred in determining that its coverage was available because "contractual liability" exclusions prevent application of the

"property damage" and "advertising injury" coverage provided in HIAR's policy. Columbia maintains that there cannot be coverage for the entire settlement amount when only 488 class members made claims under the settlement. Columbia argues that, because the settlement was premised on the belief that around 10,000 class members could bring claims, the small percentage of actual settlement claimants indicates that HIAR "gratuitously assumed" liability. Columbia argues that HIAR's over-assumption of liability triggers the "contractual liability" exclusions in its policy, and it argues that it is no cure that unclaimed settlement monies will be disbursed to charity.

Columbia, however, does not offer any cases supporting these assertions. The trial court's judgment emphasized that nothing in any judgment entered thus far indicates that class members who have not yet submitted a claim will not do so in the future. The trial court recognized that there will be an ongoing effort to contact class members when Columbia is required to indemnify the settlement. This Court is not persuaded that the trial court erred in refusing to determine that "contractual liability" exclusions applied merely because a low percentage of claims were submitted. The amount of liability and damages in this case is defined by the settlement agreement and not by how many claims were submitted.

### 4. Notice and cooperation issues did not vitiate coverage

Columbia also maintains that the trial court wrongly failed to consider its arguments that HIAR did not invoke insurance coverage because HIAR breached duties that it owed to Columbia to cooperate and provide timely notice about the class litigation and settlement proceedings. Columbia asserts that HIAR's failures of cooperation and notice "vitiated coverage." Columbia particularly complains that it was not notified of the amended petition that added HIAR's related entity HMA as a defendant. It argues that HIAR's failures of notice and cooperation violated Columbia's policy requirements that its insureds must provide notice of a lawsuit "as soon as practicable" and cooperate with Columbia in investigating or settling the lawsuit.

The class does not respond to Columbia's arguments about this issue, though it summarily states in a heading in its brief that HIAR did not breach its duty of cooperation. The class's brief, however, includes in its facts that HIAR notified Columbia at the commencement of the litigation about the class's TCPA claims, as HIAR informed Columbia of the class's TCPA action after the original petition was served. Columbia sent a letter to HIAR in December 2002 refusing to defend the case and denying coverage, and it repeated its refusal to defend in another letter sent to HIAR in October 2003. After being notified of the settlement offer in March 2005, Columbia again refused to defend or provide coverage for the class's TCPA claims, and it refused to participate in the proposed settlement.

Although Columbia argues that it was entitled to be informed of the lawsuit as soon as practicable, the facts are not in dispute that it was informed timely of the class's suit against HIAR. Columbia, however, contends that this comportment with the notice requirements was insufficient to trigger its coverage and duty to defend because there was later a failure to provide it notice of the amended petition. It suggests that *Rocha v. Metropolitan Property & Casualty Insurance Co.* is instructive for the proposition that an insured's failure to provide the insurer a copy of an amended petition creates a presumption

that the insurer was prejudiced by a failure of notice and need not provide insurance coverage, even if the insurer had disclaimed coverage after notice of a prior pleading. *See* 14 S.W.3d 242, 246–48 (Mo. App.2000).

■ Columbia argues that HIAR's conduct in failing to notify Columbia regarding the amended petition establishes that HIAR breached its policy's cooperation clause. Columbia notes that an insured's failure to comply with a cooperation clause supports an insurer's refusal to provide coverage when the insurer can show: (1) the insured materially breached the cooperation clause; (2) the insurer was substantially prejudiced as a result of the insured's breach; and (3) the insurer exercised reasonable diligence to secure the insured's cooperation. *Cf. Kearns v. Interlex Ins. Co.*, 231 S.W.3d 325, 331 (Mo.App. 2007).

■ It is typically a question for a fact-finder whether an insured provided notice to the insurer within a reasonable time and whether the insurer suffered substantial prejudice as a result. *See Hudson Specialty Ins. Co. v. Brash Tygr, LLC*, 870 F.Supp.2d 708, 725 (W.D.Mo.2012). But when the facts bearing on the issue are undisputed—as they are in this case, in which both sides asserted a right to summary judgment on the premise that there are no undisputed facts that would preclude such a judgment—then the notice issues reflect questions of law. *See id.*

■ An insured's failure to provide an amended petition does not automatically indicate that the insurer need not provide coverage. *See id.* A failure to provide an insurer an amended petition supports a refusal to defend and provide coverage only if the insurer suffered substantial prejudice by the insured's failure of notice. *See Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 91–92

(Mo.App.2005); *Hudson Specialty Ins. Co.*, 870 F.Supp.2d at 725. Prejudice from a failure of notice of an amended petition can be shown where the new petition alleges a new theory of liability that the insurer was not aware of previously. *See Truck Ins. Exch.*, 162 S.W.3d at 91–92; *Hudson Specialty Ins. Co.*, 870 F.Supp.2d at 725.

In this case, Columbia was not prejudiced when it was not informed about the amended petition, as the amended petition did not alter the theory on which the class sought damages. The class's litigation at all times presented TCPA claims that Columbia has refused since 2002 to defend or indemnify. Columbia's initial refusal to defend or provide coverage for the class's TCPA claims was the point at which it wrongly refused to defend HIAR in this litigation. Even though the initial petition invoked Columbia's coverage, Columbia sought to be wholly unconnected from the proceedings and now argues that its disconnectiveness barred coverage. Under these circumstances, the trial court did not err in refusing to entertain Columbia's assertions that its coverage was inapplicable because HIAR failed to cooperate or provide notice of the amended petition.

### 5. Coverage was invoked and *Schmitz* applies

For the foregoing reasons, the trial court did not err in determining that "property damage" and "advertising injury" coverage was invoked and triggered Columbia's duty to defend HIAR. Applying *Schmitz*, Columbia's wrongful failure to defend HIAR precludes its complaints that it is not liable to indemnify HIAR for the settlement amount.

### VI. Columbia does not get another hearing about reasonableness

■ Columbia complains that it should not be required to pay the settlement in this case because it is not reasonable. *Cf.*

*Gulf Insurance,* 936 S.W.2d at 816 (allowing an insurer a reasonableness determination before determining if it was liable to indemnify its insured). The trial court held: "Columbia's arguments [as to reasonableness] are precluded by the fact that the underlying judgment specifically found, after [a] hearing, that the settlement was fair, adequate and reasonable." This Court agrees.

As noted earlier, Columbia is too late in attempting to contest the reasonableness of the settlement. It wrongly refused to defend and thereby is not permitted to contest liability.

After the insured entered into a settlement, the trial court held a hearing at which it specifically determined that the settlement amount was reasonable and not the product of collusion. This is sufficient to establish the reasonableness of the settlement. *Schmitz,* 337 S.W.3d at 709. Columbia cannot refuse to defend and then relitigate the already-determined reasonableness issue where it has been the subject of a court judgment after a hearing and determination of reasonableness by the court. *Id.; cf. Gulf,* 936 S.W.2d at 815–16 (insurer entitled to reasonableness hearing where insured seeks to enforce settlement which has not been subject to reasonableness hearing). Columbia argues that it nonetheless should get to challenge reasonableness by putting on evidence at a trial. It cannot show, however, that it is entitled to test the reasonableness of the settlement in a full trial. The reasonableness hearing conducted by the trial court was sufficient to form and support its findings that the settlement was made in good faith and reflected "what a reasonably prudent person in the position of the [d]efendants would have settled for on the merits of [the class's] claims." Columbia is not entitled to a reassessment of the reasonableness of the settlement. *See Schmitz,* 337 S.W.3d at 709 (disclaiming an insurer's attempts to have " 'two bites of the apple'—once when the trial court determines liability and damages and once when the equitable garnishment court determines reasonableness").

## VII. Policy limits do not bar Columbia's indemnification of the settlement

 Columbia also maintains that it need not indemnify the class's settlement because the trial court erred by finding that HIAR's policy limits "do not matter." Columbia contends that the trial court wrongly awarded extra-contractual damages, even though the class made no request for extra-contractual damages, HIAR released its counterclaims for extra-contractual damages, and Columbia's maximum indemnity obligation was $2 million in the absence of a successful extra-contractual damages claim. Columbia asserts that only a "bad faith" claim could result in the award of extra-contractual damages, and it maintains that no "bad faith" allegation was presented in this case. Columbia argues that nothing in *Schmitz* permits it to be subject to payment of extra-contractual damages.

Columbia's assertions that it need not indemnify the settlement fully are not persuasive. As explored above, Columbia's wrongful refusal to defend HIAR put it in a position to indemnify HIAR for all damages flowing from its breach of the duty to defend. *See Schmitz,* 337 S.W.3d at 710. Additionally, the class maintains that there were sufficient allegations in this case that Columbia was acting in bad faith in refusing to participate in HIAR's defense or in settlement negotiations.

The class contends that, to the extent that Columbia complains that it now must pay extra-contractual damages, Columbia simply is suffering the consequences of its breach of its duty to defend and its failure to settle within its policy limits. *Cf. Shobe*

*v. Kelly*, 279 S.W.3d 203, 209–11 (Mo.App. 2009) (refusing to insulate an insurer from liability after it refused to defend, even under a reservation of rights). Because Columbia wrongly denied coverage and even a defense under a reservation of rights, and also refused to engage in settlement negotiations, Columbia should not avoid liability for the settlement judgment entered in this case. *See id.* Columbia cannot benefit from its wrongful refusal to assume control of the proceedings. *See id.* As such, the trial court did not err in determining Columbia's liability for the class's settlement.

## VIII. Overruling Columbia's motion to amend was not an abuse of discretion

Columbia argues that the trial court erred in refusing to sustain its motion to amend that sought to add HIAR's excess insurer as a party. Columbia argues that Rule 55.33 supported adding the excess insurer as a party because it provides that leave to amend should be granted "when justice so requires." Columbia contends that adding the excess insurer in this litigation would have contributed to judicial economy, prevented the award of extra-contractual damages, and provided HIAR more sufficient insurance coverage for the settlement amount.

A ruling on a motion for leave to amend is reviewed for abuse of discretion. *Asmus*, 115 S.W.3d at 432. The trial court here did not abuse its discretion in refusing Columbia's motion to amend to add the excess insurer. The summary judgment issues were fully briefed when the amendment was proposed, and adding the excess insurer would not affect the coverage issues in dispute between Columbia and the class. Notably, the class also highlights that Columbia has already engaged in a new action to assert claims against the excess insurer.

## IX. The trial court did not err on public policy grounds

Columbia also alleges that the trial court erred in refusing to consider its arguments that providing insurance coverage for the class's TCPA claims should be disallowed for public policy reasons. Columbia contends that it would frustrate the TCPA's policy aim of deterring junk faxes if junk fax-related claims did not actually impact the junk fax sender and were instead insured against. It argues that a conclusion that coverage applies does not satisfy the "fortuity test" required for insurance claims, which reflects a public policy that insurable losses must be accidental and not intentional.

These arguments are not persuasive. The public policy concerns presented regard preventing an insured from insuring against malicious conduct. As explored above, HIAR's conduct in this matter was not willful and malicious, but rather it was negligent and unintentionally resulted in violations of the TCPA.

Columbia urges this Court to declare that TCPA violations do not result in insurable losses as a matter of law and public policy. But the trial court did not err in refusing to apply public policy rationales to undo Columbia's existing obligations to its insured. To the extent that Columbia wishes to avoid liability for such losses in the future, nothing prevents it from affirmatively contracting with its insureds to exclude coverage for TCPA violations.

## X. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

All concur.